UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| **PETER EPIE,** individually and on behalf of all others similarly situated;<br><br>*Plaintiff,*<br><br>v.<br><br>**UNITED STATES FIRE INSURANCE COMPANY and TRIP MATE, INC.**<br><br>*Defendants*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

COMES NOW Plaintiff Peter Epie ("Plaintiff"), individually and on behalf of all other similarly situated persons, against Defendants United States Fire Insurance Company and Trip Mate, Inc., (collectively "Defendants"), brings this putative class action. In support thereof, Plaintiff makes the following allegations upon personal knowledge of the facts pertaining to himself and on information and belief as to all other matters, and states as follows:

### NATURE OF ACTION

This is a class action arising out of Defendants' breaches of the terms of travel insurance policies Defendants issued to Plaintiff. Defendants contracted to indemnify Plaintiff and all others similarly situated for pecuniary and other losses and damages incurred as a result of covered events that prevented insureds from taking their planned trip. Plaintiff's claims, as well as the claims of each proposed class member, are supported by the written provisions of the Policy for travel protection insurance underwritten and administered to them by Defendants. *See* **Exhibit 1**, Policy. The Policy is identified as the Basic Air Plan, Plan Number F200B.

1

Defendants have caused substantial harm to Plaintiff and the proposed class by improperly refusing to issue reimbursement for trip interruptions explicitly covered by the Policy. Plaintiff has been completely denied reimbursement for his Trip Interruption Claim (the "Claim"). Upon information and belief, Defendants have effectively adopted an approach to categorically issue denials to every Claim arising during the natural disaster that was brought on by COVID-19. Defendants refused to pay COVID-19 related trip interruptions by others insured under the Policy, for the Maximum Benefit Amount per person or plan for Trip Cancellation or Trip Interruption as listed on their respective Schedules of Benefits. Plaintiff brings this action on behalf of himself and all other similarly situated individuals. Plaintiff seeks to recover compensatory damages, consequential damages, attorney's fees and costs, and declaratory and injunctive relief.

## PARTIES

1. Plaintiff Peter Epie is a resident of Hyattsville, Prince George's County, Maryland.

2. Defendant United State Fire Insurance Company (or "U.S. Fire") is a Delaware corporation with its principal place of business located in the state of New Jersey. It can be served with process through its registered agent, the Division of Insurance, 305 Madison Avenue, Morristown, NJ 07962.

3. Defendant Trip Mate, Inc. ("Trip Mate") is a Kansas corporation with its principal place of business located in the state of Missouri. It can be served with process through its registered agent, CSC-Lawyers Incorporating Service Company, at 221 Bolivar St., Jefferson City, MO 65101.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant(s); there are more than 100 members of

the Class; and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

5. This Court has specific jurisdiction over Defendants because they maintain systematic and continuous contacts in Missouri; Plaintiff's insurance policy required claims to be filed through Trip Mate in Missouri, and Plaintiff's claim was filed through Trip Mate in Missouri; Defendants made the claim denial decisions by and through Trip Mate in Missouri; and Defendants collected and processed insurance premiums payments in Missouri.

6. Venue is proper in the Western District of Missouri pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Western District of Missouri.

## FACTUAL BACKGROUND

7. On February 4, 2020, Plaintiff used the online vacation booking website CheapOair to book a roundtrip flight from Dulles International Airport (IAD) to Douala International Airport in Cameroon (DLA), with the itinerary scheduled from March 10 to March 31, 2020.

8. Upon checkout on CheapOair's booking site, Plaintiff elected to pay an optional, additional fee of for a travel insurance coverage plan underwritten by U.S. Fire and administered by Trip Mate.

9. Plaintiff successfully made the first leg of the trip, arriving in Douala on March 11.

10. On March 18, while Plaintiff was in Cameroon, the Cameroonian Prime Minister announced that

> Cameroon's land, air and sea borders will be closed: all passenger flights from abroad are suspended, with the exception of cargo flights and ships transporting everyday consumer products as well as essential goods and materials, including stopover times will be limited

and supervised; Cameroonians wishing to return to their country will have to contact our various diplomatic representations.[1]

11. This border effectively grounded all flights, inbound and outbound, at Douala Airport until the closure was lifted.

12. On March 28, 2020, the United States Embassy for Cameroon announced that a special charter flight would be available for a limited number of American citizens, to depart from Yaounde NSI Airport to Dulles International Airport in Washington, D.C., on March 31, 2020.[2]

13. Although Plaintiff's original flight was scheduled to return to Dulles Airport on March 31, the Cameroon border closure resulted in the Douala airport being closed, and therefore prevented that flight from happening. In fact, Plaintiff arrived at Douala airport on March 31, expecting to take his scheduled flight back to the United States, but was told at the airport that the flight was canceled. He had no knowledge of the special charter flight arranged by the U.S. Embassy that day, and only learned about it later.

14. Because Plaintiff was unable to get a seat on the special March 31 flight from Yaounde NSI Airport – his only possible option for flying back to the United States – Plaintiff was left with no choice but to remain in Cameroon. Plaintiff did remain in Cameroon, paying for his own lodging.

15. On April 20, 2020, the United States Embassy for Cameroon announced that an additional flight would be chartered to Dulles Airport from Younde NSI Airport, set to depart on April 24, 2020.[3] Plaintiff was able to secure a seat on that flight, which cost $2,800 (which the U.S.

---

[1] https://www.spm.gov.cm/site/?q=fr/content/strategie-gouvernementale-de-riposte-face-la-pandemie-de-coronavirus-covid-19
[2] *See* https://cm.usembassy.gov/message-for-u-s-citizens-charter-flight-leaving-yaounde-to-washington-d-c/
[3] https://cm.usembassy.gov/opmed-charter-flight-message-apr202020/

4

government later billed him).

**Plaintiff files a claim under his insurance policy, which is denied twice**

16. Given the significant expense and delay occasioned by the airport closure, Plaintiff filed a claim under his insurance policy on or about July 17, through Defendants' online "eClaims portal" at http://www.tripmate.com/main/claims/.

17. On July 21, Plaintiff received a denial letter by mail from the claims administrator, Defendant Trip Mate, which stated the claim was denied, in part, because "you did not interrupt your trip due to a sickness, as defined, but rather due to border closures as a result of the Coronavirus, we are unable to consider this to be a covered claim." *See* **Exhibit 2**, **Trip Mate Denial Letter (7.21.2020)**.

18. Plaintiff appealed this decision, and was denied again by a letter dated November 6, 2020. *See* **Exhibit 3, Trip Mate Denial Letter, November 6, 2020.** This letter acknowledged that the policy does provide coverage for trip interruption and trip cancellation in the event of a "government-mandated shutdown of an airport or air traffic control system for reasons other than terrorism or an act of war…" Nonetheless, Trip Mate reiterated its earlier denial, stating:

> As we are unable to document a government-mandated shutdown of an airport or air traffic control system during your dates of travel, rather the President of the Republic closed down all land, air, and sea borders as an attempt to help the spread of the Coronavirus. Regrettably, the closure of borders is not a covered cause of loss, consequently, we must uphold our previous determination that this is not a payable claim.

19. This denial is incongruous with the unambiguous language of the Policy as applied to the undisputed facts. Plaintiff was unable to take his March 31, 2020 flight, which he had paid for, because Douala Airport was shut down by the order issued by the Prime Minister of Cameroon in response to the Coronavirus pandemic. This is indisputably a "government-mandated shutdown of an airport . . . for reasons other than terrorism or an act of war…" under the Policy.

20. Whether or not the "closure of a border is … a covered cause of loss" is immaterial when, as here, the government order effected the shutdown of an *airport* – unquestionably a covered cause of loss.

21. In addition to losing the value of his return trip to Dulles Airport, Plaintiff incurred the additional expenses of (1) renting an apartment from March 31 to April 24, when he was forced to remain in Douala; (2) food for preparing his own meals; (3) transportation around Douala; and (4) $2,800 for the eventual return trip to the United States. Plaintiff estimates his losses as a result of the cancellation to be at least $8,100.

## CLASS ALLEGATIONS

22. Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), defined as follows:

**Nationwide Class**
All persons
(1) located within the United States that purchased the Basic Air Plan No. F200B (the "Policy"),
(2) whose trips were interrupted or cancelled because of a government-mandated shutdown of an airport or air traffic control system for reasons other than terrorism or an act of war, from March 18, 2020 to the present, and
(3) whose claims for benefits under the Policy were denied or underpaid.

23. In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure Rule 23(c)(5), Plaintiff seeks to represent the following subclass only in the event that the Court declines to certify the Nationwide Class above. Specifically, a "Dulles Airport Traveler" subclass consisting of the following:

**Dulles Airport Traveler Subclass:**

All persons
(1) who purchased the Basic Air Plan No. F200B (the "Policy"), and

6

(2) purchased a flight into or out of Washington Dulles International Airport in conjunction with that Basic Air Plan purchase, and
(3) whose trips were interrupted or cancelled because of a government-mandated shutdown of an airport or air traffic control system for reasons other than terrorism or an act of war, from March 18, 2020 to the present, and
(4) whose claims for benefits under the Policy were denied or underpaid.

24. Excluded from the Class(es) are Defendants, any entities in which Defendants have a controlling interest, any of the officers, directors, or employees of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

25. **Numerosity.** The Classes are so numerous that joinder of all members is impracticable. Due to the nature of the insurance involved, the members of the Classes are geographically dispersed throughout the United States. While the exact number of Class members is information not readily available at this time, as only Defendants possesses the data to determine a numerical figure to indicate the Policies sold throughout the US that have resulted in myriad claims Defendants have received from consumers who would qualify as Class Members for purposes of this action, Plaintiff has reasonable belief that there are thousands of potential members in both Classes.

26. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class he seeks to represent because Plaintiff and all Class members purchased identical coverage from Defendants containing identical language, and all proposed Class members have been denied coverage.

27. **Adequacy.** Plaintiff has retained counsel experienced in complex class action and insurance litigation. Plaintiff has no interests which are adverse to or in conflict with other members of the Class. Plaintiff will fully and adequately protect the interests of all members of the Class.

28. **Commonality and Predominance.** The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members, namely: whether the events caused by the emergence of the COVID-19 pandemic, including whether closures of airports or air traffic control systems constitute Covered Events under the Policy; whether the Defendants' blanket decision to deny those covered claims constitutes bad faith; and whether the Policy requires Defendants to reimburse Policy holders for monies lost as a result of trip cancellation or interruption due to events caused by the COVID-19 pandemic.

29. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the Court, individual litigants, and counsel, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

30. **Ascertainability.** The Nationwide Class, and Dulles Airport Traveler Class, are ascertainable in that they comprise individuals who can be identified by purely objective criteria, and based on information within the ken of the Defendants.

31. **Injunctive Relief Appropriate to the Class. Fed. R. Civ. P. 23(b)(2).** This action should also be maintained as a class action because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## COUNT I: BREACH OF CONTRACT

**(individually and on behalf of the Nationwide Class or, in the alternative, the Dulles Airport Traveler Class)**

32. The preceding paragraphs are incorporated by reference as if fully alleged herein.

33. Plaintiff and the Class purchased insurance from Defendants and were thereupon issued the Policy.

34. The Policy is a valid and enforceable contract between Defendants and all policyholders, including Plaintiff and Class Members.

35. Plaintiff and the class members substantially performed their obligations under the terms of the Policy and Class Policies.

36. Plaintiff and the class members suffered losses from events that should be reimbursed as results of Covered Events under the Policy.

37. Defendants have failed to compensate Plaintiff and Class Members for their respective losses as required by the Policy.

38. As a direct and proximate result of Defendants' breaches, Plaintiff and the Class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT II: BAD FAITH AND/OR VEXATIOUS REFUSAL TO PAY (individually and on behalf of the Nationwide Class or, in the alternative, the Dulles Airport Traveler Class)

39. The preceding paragraphs are incorporated by reference as if fully alleged herein.

40. Defendants have failed and refused to pay and still refuse to pay Plaintiff and Class Members the full amounts due under the Policy and Class Policies.

41. Defendants owed Plaintiff a duty of good faith in all aspects regarding his insurance policy, including to investigate in good faith and provide a reasonable justification for denial.

42. An insurer (including its legally authorized adjusters, claim representatives, and agents)

lacks reasonable justification when it denies the claim in an arbitrary or capricious manner.

43. Defendants' blanket policy for denying Plaintiff and Class Members' claims during the time period applicable here constitutes vexatious, arbitrary, and capricious claims handling and adjusting. Such conduct was uniform as to all Class Members and constitutes bad faith and/or vexatious refusal to pay.

44. As a direct and proximate result of Defendants' breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial, including punitive damages, statutory feesattorneys' fees.

## COUNT III: DECLARATORY AND INJUNCTIVE RELIEF

**(individually and on behalf of the Nationwide Class or, in the alternative, the Dulles Airport Traveler Class)**

45. The preceding paragraphs are incorporated by reference as if fully alleged herein.

46. An actual controversy has arisen and now exists between Plaintiff and the Class, on the one hand, and Defendants, on the other, concerning the respective rights and duties of the parties under the Policy.

47. Plaintiff contends that Defendants have breached the Policy by failing to timely pay Class Members for their respective losses for covered damages.

48. Additionally and/or alternatively to the award of money damages, Plaintiff seeks a declaration of the parties' respective rights and duties under the Policy and requests the Court to declare Defendants' conduct unlawful and in material breach of the Policy so as to avoid future controversies that would allow for continual injustices such as the one at issue here, where huge insurance companies take advantage of masses of consumers.

49. Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendants (1) from continuing to

engage in conduct in breach of the Policy; and (2) ordering Defendants to comply with the terms of the Policy, including payment of all amounts due to each respective Class Member under the stated Policy coverages that were extended to them upon purchase.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendants as follows:

(a) That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class;

(b) For a judgment against Defendants for the causes of action alleged against them;

(c) For compensatory damages in an amount to be proven at trial;

(d) For a declaration that Defendants' conduct as alleged herein is unlawful and in material breach of the Policy;

(e) For appropriate declaratory and/or injunctive relief, enjoining Defendants from continuing to engage in conduct related to the breach of the Policies;

(f) For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(g) For attorneys' fees and recoverable costs; and

(h) For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**THE POTTS LAW FIRM, LLP**

11

Case 2:21-cv-04021-BCW   Document 1   Filed 02/04/21   Page 11 of 12

By: */s/ Nathaniel K. Scearcy*
Timothy L. Sifers, MO#49386
Nathaniel K. Scearcy MO#68372
1901 W. 47th Place, Suite 210
Westwood, Kansas 66205
Phone: (816) 931-2230
Fax: (713) 583-5388
tsifers@potts-law.com
nscearcy@potts-law.com

**RAIZNER SLANIA LLP**

*/s/Jeffrey L. Raizner*
Jeffrey L. Raizner
Texas Bar No. 00784806
Ben Wickert
Texas Bar No. 24066290
(*pro hac vice* forthcoming)
2402 Dunlavy Street
Houston, Texas 77006
Telephone: (713) 554-9099
Facsimile: (713) 554-9098
efile@raiznerlaw.com

**ATTORNEYS FOR PLAINTIFF**